ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| IMPERIAL CONSTRUCTIONS, INC., Recurrente, v. MUNICIPIO DE AGUADA, Recurrida. | KLRA202400499 | REVISIÓN procedente de la Junta de Subasta del Municipio de Aguada. Sobre: Subasta Núm. 1, Serie 2024-2025: PR-CRP-000701; "El Sueño del Pescador". |
|---|---|---|

Panel integrado por su presidenta, la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 3 de octubre de 2024.

La parte recurrente, Imperial Constructions, Inc. (Imperial), comparece y nos solicita que revoquemos la adjudicación de la Subasta Núm. 1, Serie 2024-2025, sobre el proyecto de construcción PR-CRP-000701, proyecto denominado "El Sueño del Pescador". El 30 de agosto de 2024, la Junta de Subasta del Municipio de Aguada informó que Imperial no había cumplido con ciertos requisitos del pliego de subasta, por lo que le descalificó como postor, y adjudicó la buena *pro* a favor de Caribbean Specialized Construction Group (CSCG)[1].

Por los fundamentos que expondremos, confirmamos la adjudicación de la subasta.

I

La controversia que atendemos surge luego de que, el 15 de julio de 2024, la Junta de Subasta del Municipio de Aguada (Junta) publicara el aviso de subasta para el año fiscal 2024-2025[2]. En atención a ello, la Junta proveyó a las licitadoras el *Invitation for Bid* (IFB) que establecía, entre otros asuntos, los requisitos con los cuales cada una tendría que cumplir

---

[1] El 9 de septiembre de 2024, Imperial presentó una *Moción en Auxilio de Jurisdicción*. Examinada la misma, mediante resolución emitida el 10 de septiembre de 2024, la declaramos **sin lugar**.

[2] *Véase*, apéndice del recurso, a la pág. 1.

Número Identificador

SEN2024_____

para ser considerada y, en última instancia, ser agraciada con la buena *pro*[3].

Según surge del expediente de la subasta, Imperial y CSCG fueron las únicas licitadoras que comparecieron al proceso, cuya celebración comenzó el 20 de agosto de 2024[4]. Valga apuntar que Imperial realizó una oferta por $2,689,679.00, y CSCG, por $2,839,300.00.

Evaluadas las propuestas, el 30 de agosto de 2024, la Junta adjudicó la subasta y notificó a las partes su determinación. En síntesis, descalificó a Imperial por esta no haber entregado todos los documentos requeridos, y otorgó la buena *pro* a CSCG.

Inconforme con la referida determinación, el 9 de septiembre de 2024, Imperial instó este recurso y formuló los siguientes señalamientos de error:

> Erró la honorable Junta de Subasta al descalificar, y no considerar la licitación de Imperial Constructions Inc. dado que los documentos que no se incluyeron no estaban contemplados en el listado de documentos que surge del "Exhibit A, Bid Check List".
>
> Erró la honorable Junta de Subasta al descalificar, y no considerar la licitación de Imperial Constructions Inc. por no someter ciertos documentos, error que es subsanable y en nada afecta la evaluación de su propuesta.
>
> Erró la honorable Junta de Subasta al no descalificar, a la empresa Caribbean Specialized Construction Group o CSCG Inc. quien sometió una licitación sin el documento de "Bid Bond" debidamente cumplimentado, omitiendo información esencial en el referido documento.
>
> Erró la honorable Junta de Subasta al adjudicar la subasta a la entidad Caribbean Specialized Construction Group, cuando esta entidad no mantiene personalidad jurídica, y tampoco presentó licitación en la subasta objeto de revisión.

(Énfasis omitido).

Por su parte, el 19 de septiembre de 2024, el Municipio de Aguada y CSCG presentaron sus sendas oposiciones al recurso de revisión judicial[5].

---

[3] *Véase*, apéndice del recurso, a las págs. 81-106.

[4] *Véase*, expediente de subasta, a la pág. 32.

[5] Tras las resoluciones emitidas por este foro el 10 y el 19 de septiembre, el Municipio de Aguada también sometió copia del expediente de la subasta.

Con el beneficio de la comparecencia de las partes, resolvemos.

II

A

La subasta tradicional y el requerimiento de propuestas (*request for proposals* o RFP) son los dos vehículos procesales que tanto el gobierno central como los municipios utilizan para la adquisición de bienes y servicios. *Puerto Rico Asphalt v. Junta*, 203 DPR 734, 737 (2019). A la luz de que la adjudicación de subastas gubernamentales conlleva el desembolso de fondos públicos, estos procedimientos están revestidos de un gran interés público. *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978, 994 (2009). Por ello, la consideración primordial al momento de determinar quién debe resultar favorecido, debe ir acorde con el interés público de proteger los fondos del erario. *Íd.* Conforme a esto, la norma imperante es procurar conseguir los precios más económicos y evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, así como minimizar el riesgo de incumplimiento. *Íd.*

Además, el Tribunal Supremo de Puerto Rico ha reiterado que las agencias gozan de una amplia discreción en la evaluación de las propuestas sometidas ante su consideración, pues estas poseen "**una vasta experiencia y especialización que la colocan en mejor posición que el foro judicial para seleccionar el postor que más convenga al interés público**." *Íd.*, a la pág. 1006. (Énfasis nuestro).

Así pues, independientemente de que se trate de un procedimiento de subasta formal o de un requerimiento de propuestas, el Tribunal Supremo ha resuelto que, una vez se adjudique la buena *pro*, los tribunales no debemos sustituir el criterio de la agencia o junta concernida, a menos que se demuestre que la decisión se tomó de **forma arbitraria o caprichosa, o que medió fraude o mala fe**. *Caribbean Communications v. Pol. de P.R.*, 176 DPR, a la pág. 1006*.*

Es preciso aclarar que en nuestro ordenamiento jurídico no existe una legislación especial que regule los procesos de subasta. En virtud de ello, corresponde a cada ente gubernamental ejercer su poder reglamentario para establecer el procedimiento y las guías que han de seguir en sus subastas para la adquisición de bienes y servicios. Ello, pues, aunque la Ley Núm. 38-2017, 3 LPRA sec. 9601, *et seq.*, intitulada *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), reglamenta ciertos aspectos de las subastas, esta legislación excluyó de la definición de agencia a los municipios. Por tanto, a estos no les aplican las disposiciones del referido estatuto. *Puerto Rico Asphalt v. Junta,* 203 DPR, a las págs. 737-738. Ante este cuadro, las subastas que celebren los municipios quedan reguladas por el *Código Municipal de Puerto Rico*, Ley Núm.107-2020, según enmendada, 21 LPRA sec. 7001, *et seq*.

En lo concerniente a la controversia que atendemos, el precitado Código establece en su Art. 2.040 las funciones y deberes que tendrá la junta de subastas de cada municipio y, sobre los criterios de adjudicación, establece que:

> Cuando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo. En el caso de ventas o arrendamiento de bienes muebles e inmuebles adjudicará a favor del postor más alto. **La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta.** La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo o el más alto, según sea el caso, si con ello se beneficia el interés público. En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación. La adjudicación de una subasta será notificada a todos los licitadores certificando el envío de dicha adjudicación mediante correo certificado con acuse de recibo, o mediante correo electrónico, si así fue provisto por el licitador o licitadores. En la consideración de las ofertas de los licitadores, la Junta podrá hacer adjudicaciones por renglones cuando el interés público así se beneficie. La Junta de Subasta notificará a los licitadores no agraciados las razones por las cuales no se le adjudicó la subasta. Toda adjudicación tendrá que ser notificada a cada

uno de los licitadores, apercibiéndolos del término jurisdiccional de diez (10) días para solicitar revisión judicial de la adjudicación ante el Tribunal de Apelaciones, de conformidad con el Artículo 1.050 de este Código.

21 LPRA sec. 7216. (Énfasis nuestro).

B

El Tribunal Supremo de Puerto Rico ha resuelto que el derecho a un debido proceso de ley exige que toda notificación de adjudicación de una subasta municipal sea adecuada; ello, en virtud del derecho a una efectiva revisión judicial. *Torres Prods. v. Junta Mun. Aguadilla*, 169 DPR 886, 893 (2007). Asimismo, ha expresado que la notificación de adjudicación que la junta de subastas municipal emita debe, además, incluir los fundamentos que justifican la determinación, aunque sea de **manera breve, sucinta o sumaria**. *Íd.*, a la pág. 894. De esta forma, los tribunales podemos revisar los fundamentos expuestos en la notificación de adjudicación para determinar si la decisión fue arbitraria, caprichosa o irrazonable. *Íd.*

Ahora bien, el Tribunal Supremo también ha determinado que, si la información incluida en la notificación de adjudicación es suficiente para cumplir con el estándar mínimo de adecuacidad establecida por la jurisprudencia, la síntesis de las propuestas puede ser de forma concisa y el señalamiento de defectos de manera generalizada. *Íd.*, a la pág. 895. Esto así, pues requerir la información detallada sobre las ofertas de los licitadores desvirtuaría la razón de ser del requisito, lo cual dejaría de ser una síntesis para convertirse en un análisis detallado de cada propuesta. *Íd.* Por tanto, para que la notificación de la adjudicación de una subasta sea adecuada, como mínimo, debe incluir la información siguiente:

[L]os nombres de los licitadores en la subasta y una síntesis de sus propuestas; los factores o criterios que se tomaron en cuenta para adjudicar la subasta; los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos y la disponibilidad y el plazo para solicitar la reconsideración y la revisión judicial.

*Torres Prods. v. Junta Mun. Aguadilla*, 169 DPR, a la pág. 895, citando a *Pta. Arenas Concrete, Inc. v. J. Subastas*, 149 DPR 869, 879 (1999).

III

La controversia medular en este recurso gira en torno al planteamiento de Imperial a los efectos de que la Junta de Subasta del Municipio de Aguada incidió al descalificarle del proceso de subasta y otorgar la buena *pro* a favor de CSCG. En sus primeros dos señalamientos de error, Imperial aduce que la Junta erró al no tomar en consideración su propuesta. Por estar intrínsecamente relacionados, discutiremos en conjunto los referidos señalamientos.

La recurrente sostiene que la descalificación de su propuesta se debió, en parte, a que la invitación de subasta o *IFB* generaba confusión en cuanto a los documentos que se debían entregar con la propuesta. Ello, pues *el Bid Checklist* instruía a las licitadoras a someter un "*financial information as established in IFB instructions Section 6.1.5*"[6]. No obstante, la referida sección de instrucciones hacía referencia a **documentos organizacionales**, los cuales, añade, sí incluyó. En virtud de lo anterior, arguye que los documentos omitidos existían y eran de fácil acceso, y debieron haber sido requeridos por la Junta; quien, aun sin ellos, podía auscultar la capacidad financiera de la empresa mediante los demás documentos presentados. En específico, aludió a los estados financieros auditados de la empresa, los cuales incluyó como parte de su propuesta.

Por su parte, tanto el Municipio de Aguada como la licitadora agraciada plantearon que, si bien medió alguna confusión en cuanto al *Bid Checklist*, todas las licitadoras tuvieron acceso a la totalidad de la invitación la cual incluía y especificaba los requisitos obligatorios o *mandatory requirements*[7]. Por tanto, la licitadora recurrente tenía conocimiento de todos los documentos financieros que debió haber entregado a la fecha de la subasta.

En lo concerniente, entre los documentos solicitados se encontraban: una carta de referencia bancaria, emitida por alguna

---

[6] *Véase*, apéndice del recurso, a la pág. 3.

[7] *Íd.*, a las págs. 99-101.

institución financiera; estados financieros auditados con hoja de balances, estados de operaciones, estados sobre flujo de efectivo y notas; copia de las planillas de contribución sobre ingresos correspondientes a los dos (2) años cubiertos por los estados financieros presentados. No obstante, surge tanto del expediente de la subasta, como de la notificación de su adjudicación, que la propuesta de Imperial carecía de copia de las planillas de contribución sobre ingresos y de la referencia bancaria.

Conforme discutido, **las juntas de subastas de los municipios harán adjudicaciones solo luego de tomar en consideración, entre otros asuntos, que las propuestas sean conforme a las especificaciones, los términos de entrega, y la habilidad del postor para realizar y cumplir con el contrato.** El examen de la totalidad del expediente revela que la invitación a la subasta especificaba, entre los requisitos obligatorios o *mandatory requirements*, que cada licitadora debía entregar información financiera suficiente para demostrar que poseía capacidad y recursos financieros suficientes para realizar el trabajo descrito. También surge que la recurrente no cumplió en someter oportunamente los documentos descritos. Por tanto, la Junta tenía amplia discreción para descalificarla y otorgar la buena *pro* a quien cumpliera con los requisitos, aun cuando no fuera el postor más bajo.

En esta ocasión, la parte recurrente no presentó prueba o argumento alguno que nos persuada de que la determinación de la Junta de Subasta del Municipio de Aguada se tomó de forma arbitraria o caprichosa, o que hubiera mediado fraude o mala fe.

En cuanto al tercer error señalado, la parte recurrente propone que la Junta de Subasta erró al no descalificar a la empresa Caribbean Specialized Construction Group, quien sometió una licitación sin haber adjuntado el *bid bond* debidamente cumplimentado. En particular, señala que no especificó el monto correspondiente al valor de la fianza y la fecha de su vigencia[8]. Arguye que ello resulta incompatible con lo resuelto por el

---

[8] *Véase*, expediente de subasta, a las págs. 50-54.

Tribunal Supremo de Puerto Rico *en Autoridad de Carreteras v. CD Builders*, Inc., 177 DPR 398 (2009). No le asiste la razón.

En la invitación a subasta se estableció lo siguiente en cuanto al *bid bond* o fianza que debía someter cada licitadora:

> 6.1.7 **Bid Bond**: The Bid must be accompanied by a Bid Bond made payable to the Municipality of Aguada in the amount of **five percent (5%) of the Bid**. The Bid Bond may be presented by the Bidder in the form of a certified Bank Check or a Bid Bond in the form attached as **Exhibit D** (Bid Bond). If a Bid Bond is used, it must be issued by a surety appearing in the latest UD Department of Treasury's Listing of Approved Sureties (Circular Letter 570) and authorized to do Business in Puerto Rico. **Bids will remain subject to acceptance for the one hundred twenty (120) days after the Bid Due Date.** Nonetheless, the Municipality of Aguada, at its discretion, may release a Bid and return the related Bid Bond prior to that date. The Bid Bond of the successful Bidder will be retained until such Bidder has submitted all documents required for the execution of the contract and such contract has been duly executed by the bidder and the Municipality of Aguada[9].

(Énfasis en el original).

Ahora bien, examinado el documento o *bid bond* presentado por la licitadora agraciada, surge el lenguaje específico conducente a establecer que se aseguraría el 5% de la propuesta presentada al Municipio de Aguada[10]. En atención a lo anterior, resulta claro que se garantizó el monto total de la propuesta y que este cumplía con los visos de confianza requeridos en la invitación a la subasta. Es decir, que, en esta ocasión, contrario a lo ocurrido en *Autoridad de Carreteras v. CD Builders*, Inc., 177 DPR 398 (2009), se presentó un documento que, si bien no especificaba la cantidad, sí aseguraba que se trataba del 5% de la cantidad por la que se sometía la propuesta. Por tanto, no era requerido de la Junta descalificar a la licitadora por la aludida omisión objeto de controversia. Ante ello, concluimos que no se cometió el tercer error señalado por la parte recurrente.

En cuanto al cuarto y último señalamiento de error, nos corresponde analizar si, al notificar la adjudicación de una subasta, es suficiente dirigirse

---

[9] *Véase*, expediente de subasta, a las págs. 22-23.

[10] *Íd.*, a la pág. 50.

al nombre comercial de la licitadora o si, por el contrario, se debe notificar al nombre que consta registrado en el Departamento de Estado.

La parte recurrente sostiene que la Junta erró al adjudicar la subasta a favor de **Caribbean Specialized Construction Group**, entidad que, según plantea, no tiene personalidad jurídica, ni participó del proceso de subasta.

Por su parte, la licitadora recurrida aclara que CSCG, Inc., es la corporación cuyas siglas corresponden al nombre comercial de *Caribbean Specialized Construction Group*. Aún más, arguye que lo anterior consta en la propuesta y que, contrario a lo planteado por la recurrente, no existe duda alguna sobre la identidad de la licitadora agraciada.

En cuanto al referido error, el Municipio recurrido plantea que el argumento respecto a que se adjudicó la buena *pro* a una licitadora distinta a la que presentó su propuesta resulta inmeritoria. Añade que la identidad de la agraciada surge del pliego de subasta sometido por CSCG, Inc., quien adjuntó, en cumplimiento con la sec. 6.1.2 de los requisitos obligatorios, toda la información relacionada a su identidad jurídica[11].

Examinada la notificación de la adjudicación de la subasta a la luz del derecho aplicable, concluimos que no nos encontramos ante una notificación defectuosa. En este caso, no estamos ante una notificación carente de información o de fundamentos con respecto a los criterios tomados en consideración por la Junta al momento de adjudicar la subasta. De la notificación surge que la Junta claramente especificó las razones por las cuales descartaba la oferta de la parte recurrente y notificó a la licitadora agraciada por su nombre comercial. Reiteramos que Caribbean Specialized Construction Group es el nombre comercial de CSCG, Inc. El referido nombre se utilizó indistintamente en los documentos presentados por la licitadora agraciada y los utilizados por la Junta a lo largo del proceso de subasta. Por tanto, concluimos que la notificación de la adjudicación de la subasta fue adecuada.

---

[11] *Véase*, expediente de subasta, a la pág. 31.

IV

Por lo fundamentos expuestos, confirmamos la adjudicación de la subasta, según dictaminado por la Junta de Subasta del Municipio de Aguada el 30 de agosto de 2024.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones